Marc P. Cook
Nevada Bar # 4574
Cook & Kelesis, Ltd.
517 S. 9th Street
Las Vegas, Nevada 89101
Tel: 702-737-7702
mcook@bckltd.com

[Additional counsel appearing on signature page]

*Attorneys for Plaintiffs and the Classes*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| JOHN FINKEN and KAREN FINKEN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| KELLER WILLIAMS REALTY, INC., a Texas corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs John Finken and Karen Finken ("Plaintiffs" or "Finkens") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Keller Williams Realty, Inc. ("Defendant" or "Keller Williams") to: (1) stop its practice of placing calls using an "automatic telephone dialing system" ("ATDS") to telephones of consumers nationwide without their prior express consent; (2) stop its practice of placing telemarketing calls to consumers telephones who are registered on the National Do Not Call Registry; (3) enjoin Defendant from continuing to place telephone calls using an ATDS to consumers who have requested that the calls "stop"; and (4) to obtain redress for all persons injured by Defendant's conduct. Plaintiffs also seek an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees as set forth herein.

1

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* ("TCPA"), a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* because the classes each consist of over 100 people, at least one member of each class is from a State other than Texas (the state of incorporation of the Defendant), and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

2. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in the State of Nevada and a substantial part of the events or omissions giving rise to the claim occurred in the State of Nevada.

## PARTIES

3. Plaintiffs are natural persons and residents of Las Vegas, Clark County, Nevada.

4. Defendant Keller Williams Realty, Inc. is a corporation incorporated and existing under the laws of the State of Texas whose primary place of business and corporate headquarters is located at 1221 S Mopac Expressway, Suite 400, Austin, Texas 78746.

## COMMON FACTUAL ALLEGATIONS

5. Defendant Keller Williams is an international real estate franchise with over 900 offices worldwide.

6. Unfortunately for consumers, Keller Williams casts its marketing net too wide. That is, in an attempt to promote its business and to generate property listings for its agents Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that features the repeated making of unsolicited autodialed calls to consumers' telephones, including their cellular telephones, all without any prior express consent to make these calls.

7. Defendant also places calls to consumers who have registered their numbers on the National Do Not Call Registry without securing prior express written consent.

8. To make matters worse, Defendant places these calls to telephones using an

2

ATDS without consumers' prior express written consent in violation of the TCPA.

9. And, despite consumers' attempts to opt-out of future calls, Defendant repeatedly ignores requests to stop calling and instead continues to call such phone numbers.

10. Keller Williams fails to implement proper policies and procedures to comply with the TCPA and instead actively encourages its agents and employees to flout the TCPA and acceptable industry guidance. That is, in an effort to promote its business, Keller Williams publishes various blog posts on its website that encourage Keller Williams agents and employees to search the internet—particularly Craigslist and Zillow—for expired or "for sale buy owner" listings and then to call these individuals in an attempt to solicit consumers.[1]

11. Furthermore, on information and belief, Keller Williams conducts training and seminars that encourage their agents and employees to aggressively pursue leads for its services. This includes using the internet as a source for such leads. No prior express consent was obtained through this method of lead generation.

12. In making the phone calls at issue in this Complaint, Defendant and/or its agents utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant and/or its agents has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously, without human intervention.

13. Defendant knowingly made, and continues to make, telemarketing calls without the prior express consent of the recipients and knowingly continues to call them after requests to

---

[1] *See The Three Major Seller Lead Sources*, https://blog.kw.com/2012/05/07/the-three-major-seller-lead-sources/ (May 7, 2012); *see also Cold Calling Tips That Pay Big*, https://blog.kw.com/2015/03/18/cold-calling-tips-pay-big/ (Mar. 18, 2015); *see also Four Common Challenges with FSBOS and Expired Listings*, https://blog.kw.com/2015/04/06/fsbos-and-expired-listings/ (Apr. 6, 2015); *see also How to Build a Big Business Around Telephone Prospecting*, https://blog.kw.com/2014/09/18/how-to-build-a-big-business-around-telephone-prospecting/ (Sept. 18, 2014).

stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFFS

14. Plaintiff Karen Finken registered her cellular telephone number on the National Do Not Call Registry on or around June 30, 2005.

15. Plaintiff John Finken registered his cellular telephone number on the National Do Not Call Registry on or around August 17, 2017.

16. In 2017, Plaintiffs listed their home for sale through a private broker.

17. In or around July 2017, Plaintiffs made the decision to retain their home and remove all for sale listings.

18. Beginning on or around January 1, 2018 Plaintiffs began receiving non-stop telemarketing calls from various real estate agencies soliciting Plaintiffs to utilize their listing and other services.

19. Keller Williams, in particular, solicited Plaintiffs by repeatedly placing calls to their personal cellular telephones on a daily basis.

20. Plaintiffs received telemarketing calls from Keller Williams from a variety of telephone numbers. They specifically recall being called by Keller Williams from the following numbers: 702-877-2500, 702-305-1712, and 702-340-7149.

21. Plaintiffs continue to receive telemarketing calls from Keller Williams with no sign that it will stop.

22. Plaintiff Karen Finken received one such call on February 11, 2018, well beyond 30 days after she requested to be placed on Keller Williams's internal do not call list.

23. On several occasions, Karen Finken recalls answering her telephone and having to wait until the caller connected in order to speak before identifying himself as with Keller Williams. This noticeable pause is a tell tale sign that an ATDS is being utilized.

24. Defendant utilized an automatic telephone dialing system ("ATDS") to place the calls at issue. Specifically, the hardware and software used by Defendant or its agent has the

capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

25. Initially, Plaintiffs both requested Keller Williams that it stop calling them; however, Keller Williams refused to honor their stop requests and continued to place calls to Plaintiffs.

26. Plaintiff Karen Finken recalls asking an agent by the name R. Jerome Johnson to stop calling her. Mr. Johnson responded that real estate agents would never stop calling until the house was listed again for sale and then continued to suggest that they list the house with him.

27. Plaintiffs do not have a relationship with Defendant, have never provided their telephone numbers directly to Defendant, and have never requested that Defendant place autodialed calls to them or to offer them its services. Simply put, Plaintiffs have never provided any form of prior express written or oral consent to Defendant to place autodialed calls to them and have no business relationship with Defendant.

28. Defendant was, and is, aware that the above-described telemarketing calls were made to consumers like Plaintiffs who have not consented to receive them.

29. Moreover, Defendant deliberately and intentionally refuses to honor requests by consumers to place their number on its do not call list.

30. By making unauthorized autodialed calls as alleged herein, Keller Williams has caused Plaintiffs and members of the Classes actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the placement of such calls, in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant made the calls knowing they trespassed against and interfered with Plaintiffs and the

other Class members' use and enjoyment of, and the ability to access, their cellphones, including the related data, software, and hardware components.

31.     To redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited telemarketing calls to cellular telephones. On behalf of the Classes, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule (23(b)(3) on behalf of themselves and the three Classes defined as follows:

> **No Consent Class**: All persons in the United States who (1) from the last four years to the present; (2) Defendant, or a third person acting on behalf of Defendant, called; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's products or services; (5) using an ATDS; and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiffs.
>
> **Do Not Call Registry Class:** All persons in the United States who (1) from the last four years to the present; (2) received more than one telephone call within any 12-month period; (3) on a telephone number; (4) which had been listed on the National Do Not Call Registry for at least thirty days; (5) from Defendant, or a third person acting on behalf of Defendant; (6) for the same purpose for which Defendant called the Plaintiffs; and (7) for whom Defendant had obtained prior express written consent to make such telephone calls at the time they were made.
>
> **Stop Call Class**: All persons in the United States who (1) from the last four years to the present; (2) Defendant, or a third person acting on behalf of Defendant, called; (3) on the person's cellular telephone; (4) for the purpose for which Defendant called the Plaintiffs; (5) using the same equipment that was used to call Plaintiffs; and (6) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

33.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3)

persons who properly execute and file a timely request for exclusion from a Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons.

34. **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited telemarketing calls to thousands of consumers who fall into the defined Classes. However, the exact number of members of the Classes can be identified through Defendant's records and other objective criteria.

35. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

36. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

37. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) Whether Defendant's conduct violated the TCPA;
   (b) Whether Defendant systematically made telephone calls to cellphone owners who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;
   (c) Whether Defendant made the calls with the use of an ATDS;
   (d) Whether Defendant called consumers whose telephone numbers were registered on the National Do Not Call Registry;

(e) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f) Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called by Defendant.

38. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiffs and No Consent Class)**

39. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

40. Defendant made unsolicited and unwanted telemarketing calls to cellular telephone numbers belonging to Plaintiffs and the other members of the No Consent Class, without their prior express consent in an effort to generate leads for Defendant's home listing services.

41. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

42. Further, Defendant made the telephone calls using an ATDS. On information and belief, the equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

43. By making unsolicited telephone calls to Plaintiffs and members of the No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

44. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

45. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the No Consent Class.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiffs and the Do Not Call Registry Class)**

46. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

47. 47 U.S.C. § 227(c) provides that any "person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

50. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a

request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

51.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3). Each class member had had his o her phone number registered on the DNC registry yet received more than one call in any 12-month period.

52.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy for processing do not call requests available on demand, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any such internal do

not call list or policy, and by failing to internally record and honor do not call requests.

53. Defendant made more than one unsolicited telephone call to Plaintiffs and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

54. Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

56. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
(On behalf of Plaintiffs and the Stop Call Class)**

57. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

58. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiffs and the other members of the Replied Stop Call Class on their

telephones in an effort to sell its products and services after the call recipient informed Defendant that s/he no longer wished to receive calls from Defendant.

59. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. That is, Defendant utilized equipment that made the telephone calls to Plaintiffs and other members of the Replied Stop Call Class simultaneously and without human intervention.

60. On information and belief Defendant has no written internal do not call policy wherein it honors do not call requests nor are employees or personnel engaged in calling activities trained with respect to any such policy. Defendant does not honor stop calling requests and continues to call persons using an ATDS, both within and beyond 30 days after the do not call request has been made.

61. Defendant made calls to each Plaintiff and other members of the Replied Stop Call Class (who had been registered on the national DNC registry for at least 30 days) more than 30 days after being asked to stop calling.

62. By making unsolicited telephone calls to Plaintiffs and members of the Replied Stop Call Class's telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

63. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Replied Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellphones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

64. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Replied Stop Call Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

65. An order certifying the Classes as defined above, appointing Plaintiffs John Finken and Karen Finken as the representatives of the Classes, and appointing their counsel as Class Counsel;

66. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

67. An order declaring that Defendant's actions, as set out above, violate the TCPA;

68. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

69. An order requiring Defendant to identify any third-party involved in the unsolicited calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

70. An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Classes;

71. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

72. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

73. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA;

74. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

75. Such other and further relief that the Court deems reasonable and just.

# JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: February 16, 2018

**JOHN FINKEN and KAREN FINKEN,** individually and on behalf of all others similarly situated,

By: __s/Marc P. Cook_____
One of Plaintiffs' Attorneys

Marc P. Cook
Nevada Bar # 4574
Cook & Kelesis, Ltd.
517 S. 9th Street
Las Vegas, Nevada 89101
Tel: 702-737-7702
mcook@bckltd.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiffs and the Putative Classes*

*pro hac vice to be filed